# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Dillon Dunham, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a White 2013 Chevrolet Van, with Missouri License Plate Number 7YHC27, and VIN Number 1GCWGFCA8D1140018 (hereinafter referred to as "the **Target Vehicle**"). Agents conducted a Department of Motor Vehicle Records review and verified the **Target Vehicle's** license plate and VIN. Additionally, the records revealed the **Target Vehicle** is registered to Edgar Sanchez at 420 Spruce Avenue, Kansas City, Missouri. Based on the facts set forth in this affidavit, I believe that the **Target Vehicle** is currently being used in furtherance of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute a controlled substance). There is probable cause to believe that the installation and use of a tracking device on the **Target Vehicle** will lead to evidence, fruits, and instrumentalities of the aforementioned crimes, as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent for the Federal Bureau of Investigation ("FBI") in Kansas City, Missouri, and have been assigned to this office since January 2021. I have received approximately 20 weeks of specialized training at the FBI Academy at Quantico, Virginia, and currently work in the Transnational Organized Crime squad. As an FBI Special Agent, I have monitored Title III wire investigations, conducted surveillance of Drug Trafficking Organizations (DTOs), executed search warrants, planned, and organized FBI operations of controlled purchases of illegal drugs, handled and recruited high level Confidential Human Sources (CHS), and

investigated DTOs. My responsibilities include the investigation of federal laws, including investigations of drug-related and transnational organized criminal activity.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. The United States, including the FBI, is conducting a criminal investigation of Jose Rivera Madrigal and the Rivera Madrigal Drug Trafficking Organization (DTO), and others as yet unknown, regarding possible violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute a controlled substance).

5. In March 2021, FBI Kansas City investigators initiated an investigation into a cocaine and methamphetamine distribution network operating in the Kansas City metropolitan area. During the course of the investigation, agents recruited and developed a Confidential Human Source (CHS), hereinafter referred to as "CHS1." In a subsequent interview, CHS1 identified several family members (with the last name Rivera Madrigal) operating a drug trafficking organization (DTO) in the Kansas City area. Investigators further identified several persons of interest within the DTO, based on previous intelligence reporting, previous law enforcement cases, and open-source research. CHS1 was shown several photographs of these identified individuals. One of the individuals identified by CHS1 was Jose Rivera Madrigal. CHS1 described Jose Rivera Madrigal as a drug courier for the Rivera Madrigal DTO. CHS1 said he/she had previously conducted drug transactions, prior to his/her status as CHS, over the last three years with Jose

2

Rivera Madrigal for kilograms of cocaine in the Kansas City area. CHS1 identified another photograph of Valdemar Rivera Madrigal a.k.a. "Valdo." CHS1 said Valdo is the Rivera Madrigal DTO's Mexican based drug shipment coordinator. Over the last three years, CHS1 has spoken with Valdo via phone and social media, related to drug transactions in the Kansas City area.

6. CHS1 said typically Valdo would provide a phone number to CHS1 for the DTO's local drug coordinator. The order for a drug purchase would be placed with the local drug coordinator, who would then direct drug couriers to deliver the drugs. The standard practice of the DTO is for the drug couriers to drive small, older model trucks (commonly Nissan Frontiers) to deliver the drugs. The drug couriers will have no phone contact with the recipients of the drugs and minimal contact during the deal. The drug couriers will sometimes wear reflective construction vests to blend in to avoid law enforcement detection. CHS1 said the drug courier vehicles typically have hidden traps to conceal the drugs in.

7. CHS1 is cooperating in consideration of potential charges related to a drug conspiracy investigation. CHS1's criminal history includes traffic infractions, one offense for driving while suspended, and one misdemeanor theft arrest. CHS1 has been proven reliable, based on information that was independently corroborated by investigators. CHS1 has also cooperated in consensual cell phone monitoring and completed tasks asked by investigators, such as gathering intelligence on members of the Rivera Madrigal DTO.

8. Through CHS reporting, surveillance, open-source research, and controlled evidence purchases, investigators learned the Rivera Madrigal DTO drug couriers are typically from Mexico, have no ties to the Kansas City area, and are instructed by the DTO to report to Kansas City for the sole purpose of delivering drugs on the DTO's behalf. After the couriers spend approximately three to six months in the Kansas City area, the DTO will rotate (or bring in) new

drug couriers to the area. Throughout the investigation, agents have identified several vehicles that have been used by the drug coordinators and/or drug couriers through surveillance, CHS reporting, and controlled evidence purchases.

9. Over the course of the investigation, agents identified Jose Rivera Madrigal and Jesus Diaz Mendoza a.k.a. "Chuy" as local drug coordinators working for the DTO. Between October 2022 and November 2023, investigators have seized a total of approximately 15 kilograms of methamphetamine and approximately two kilograms of cocaine from the Rivera Madrigal DTO. These seizures were conducted through controlled evidence purchases using FBI CHSs. All of the methamphetamine purchased by investigators was wrapped in green plastic wrapping.

10. On December 7, 2023, investigators executed a search warrant at 4526 Sortor Drive, Kansas City, Kansas, (23-mj-08242-TJJ) in the United States District Court for the District of Kansas. This location was identified as a stash house used by the DTO. During the search, investigators located approximately 202 kilograms of methamphetamine, wrapped in green plastic, buried in containers in the ground. Investigators also located approximately 27 kilograms of cocaine buried in containers. Prior to the execution of the search warrant, investigators observed one of the drug courier vehicles leaving 4526 Sortor Drive, Kansas City, Kansas. Investigators contacted the Kansas City, Kansas, Police Department (KCKPD) to conduct a traffic stop of the courier vehicle. KCKPD obtained probable cause to search the vehicle and located approximately 12 kilograms of methamphetamine and three kilograms of cocaine (wrapped in green plastic, which was consistent with the controlled substances located at 4526 Sortor Drive). The driver and passenger were identified as couriers for the DTO.

11. On December 16, 2023, CHS1 met with Rogelio Rivera Madrigal in Kansas City, Kansas. Through investigative intelligence, agents know Rogelio Rivera Madrigal a.k.a. "Pico"

is a brother to Jose Rivera Madrigal and Valdemar Rivera Madrigal a.k.a. Valdo. Valdo told Rogelio Rivera Madrigal he wanted everything "new" after the New Year (such as houses, couriers, and vehicles) for his drug business.

12. On February 28, 2024, CHS1 had contact with Valdo via Facebook Messenger. Valdo told CHS 1 his "white aunt" had arrived. CHS1 explained "white aunt" was a coded term meaning the cocaine had arrived in Kansas City. The next day, Valdo provided CHS1 with a price of $14,000 per kilogram of cocaine and $2,300 per kilogram of methamphetamine. On March 4, 2023, CHS1 met with Rogelio Rivera Madrigal in Kansas City, Kansas. Rogelio Rivera Madrigal said Valdo was preparing to send drug shipments to the Kansas City area and had sent couriers from Mexico. Rogelio Rivera Madrigal said Jose Rivera Madrigal was in Kansas City, awaiting the arrival of the new couriers.

13. On March 18, 2023, CHS1 had contact with Valdo via Facebook Messenger to order some drugs. Valdo told CHS1 the drugs were already gone.

14. On May 22, 2024, investigators conducted a controlled evidence purchase involving a separate District of Kansas and Mexico-based target, associated with the DTO and known to use the Rivera Madrigal DTO's local drug couriers. On this occasion, investigators used a second Confidential Human Source (CHS), hereinafter referred to as "CHS2." CHS2 is cooperating for monetary value and consideration of United States citizenship. CHS2 has no criminal history. CHS2 has been proven reliable, based on information provided by CHS2 that was independently corroborated by investigators. CHS2 has also cooperated in consensual monitoring via cell phone and completing tasks asked by investigators such as gathering intelligence on other DTOs in the Kansas City area.

15. CHS2 had contact with this target, via WhatsApp, regarding a transaction for four kilograms of methamphetamine for $9,200. The two agreed to meet at the Lowe's parking lot (4960 Roe Blvd., Roeland Park, Kansas). The target called CHS2 and told CHS2 to meet with the occupants of a white Chevy van. CHS2 then contacted two Hispanic males, who were occupying the **Target Vehicle**, in the parking lot. CHS2 confirmed they were the individuals CHS2 was supposed to meet. The **Target Vehicle's** passenger then exited, retrieved a brown box from within the **Target Vehicle**, and placed the brown box in CHS2's trunk. CHS2 then provided the **Target Vehicle's** passenger with $9,200 in exchange for the box's contents. Investigators later recovered the brown box from CHS2 and observed four bundles of a crystal-like substance, wrapped with green plastic. Investigators conducted a field test on the crystal-like substance, which resulted in a positive test result for the presence of methamphetamine. The pre-packaged weight of the bundles was 4,100.7 grams. The bundles' packaging was consistent with the prior controlled evidence purchases involving members of the Rivera Madrigal DTO. CHS2 identified the **Target Vehicle's** driver as the same driver from prior 2022 controlled evidence purchases CHS2 participated in. After the controlled evidence purchase, investigators followed the **Target Vehicle** to 5764 College Avenue, Kansas City, Missouri, where both occupants went inside the residence.

16. Based on this recent activity, investigators determined the DTO has reinitiated drug distribution activities in the Kansas City area after law enforcement's December 2023 enforcement actions.

17. On May 25, 2024, CHS1 and an undercover employee (UCE) attended the Rogelio Rivera Madrigal's wedding at 9014 E. U.S. Highway 40, Independence, Missouri. This location is described as a small venue used for weddings and other private events. Investigators observed Jose Rivera Madrigal and Jesus Diaz Mendoza in attendance at this location with Rogelio Rivera

Madrigal. Investigators observed the **Target Vehicle** park near 9014 E. U.S. Highway 40, Independence, Missouri. Both of the **Target Vehicle** occupants were identified as the same Hispanic males involved in the May 22, 2024, controlled evidence purchase. Both Hispanic male occupants went inside the venue. CHS1 and the UCE observed the two Hispanic males interact with Rogelio Rivera Madrigal, Jose Rivera Madrigal, and Jesus Diaz Mendoza at the wedding. The occupants later returned to the **Target Vehicle** and left the venue. Investigators observed the **Target Vehicle** stop at a Kansas City, Kansas, restaurant before returning to 5764 College Avenue, Kansas City, Missouri.

18. On May 30, 2024, CHS1 had telephonic contact with Valdo. Valdo provided the price of $13,000 per kilogram of cocaine and $2,000 per kilogram of methamphetamine. Valdo said both drugs were ready to be purchased and to just let him (Valdo) know when CHS1 was ready.

19. On June 12, 2024, CHS1 communicated with Valdo, via WhatsApp, through messaging and voice notes. When CHS1 requested to purchase methamphetamine, Valdo said they were out of drugs but were possibly expecting a shipment next week. Based on training, experience, and intelligence gained through this investigation, agents believe the DTO will deploy the **Target Vehicle** to retrieve the drug shipment for distribution purposes in the Kansas City area.

20. Based on the spot checks, investigators believe the **Target Vehicle** operators are residing at 5764 College Avenue, Kansas City, Missouri. Investigators also believe the safest location in which the GPS tracker can be installed successfully in/on the **Target Vehicle** would be in the Western District of Missouri at 5764 College Avenue, Kansas City, Missouri.

21. Due to the erratic actions of drug traffickers while they are under surveillance, and my knowledge that drug traffickers often conduct counter surveillance when involved in illegal

activities such as drug trafficking and money laundering, a tracking device is requested to aid in tracking the activities of unknown associates of the Rivera Madrigal DTO. I am also aware that drug traffickers often use multiple houses to hide their product and proceeds from law enforcement. The assistance of a GPS tracker would help FBI KC investigators identify other locations the Rivera Madrigal DTO frequent for drug trafficking purposes and houses used by the Rivera Madrigal DTO members. Based on the above information, there is probable cause to believe the **Target Vehicle** has been used, and will continue to be used, to transport illegal controlled substances, as well as the proceeds of controlled substance sales. Based on my personal observations and continued surveillance operations, I know that the **Target Vehicle** is presently within the Western District of Missouri. Therefore, a tracking device would aid law enforcement in gathering intelligence on the Rivera Madrigal DTO and their criminal activities.

22. In order to track the movement of the **Target Vehicle** effectively and to decrease the chance of detection, I seek to place a tracking device in or on the **Target Vehicle** while the vehicle is in the Western District of Missouri. Because the occupants may possibly park the **Target Vehicle** on private property, it may be necessary to enter onto private property (including 5764 College Avenue, Kansas City, Missouri where agents have observed the **Target Vehicle** parked) and/or move the **Target Vehicle** in order to effect the installation, repair, replacement, and removal of the tracking device.

23. To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device during both daytime and nighttime hours.

24. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days

following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the **Target Vehicle** within the Western District of Missouri within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **Target Vehicle** after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Western District of Missouri.

26. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

27. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the FBI, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

_____
Dillon Dunham
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me via reliable electronic means on 14th day of June 2024.

Telephonically at 8:49 am CT

_____
HONORABLE JILL A. MORRIS
United States Magistrate Judge
Western District of Missouri



10